CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 29 2012

JULIA C. DUDLEY, CLERK
BY: /s/ B. Weeks
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RANDALL J. KEYSTONE, | ) | CASE NO. 7:12CV00018 |
| | ) | |
| Petitioner, | ) | |
| | ) | MEMORANDUM OPINION |
| vs. | ) | |
| | ) | |
| DIRECTOR, D.O.C., | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

Randall J. Keystone, a Virginia inmate proceeding pro se, filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging the validity of his confinement on convictions for communicating a threat by letter. The respondent filed a motion to dismiss, and Keystone responded, making the matter ripe for disposition. After review of the pleadings and the record, the court grants the motion to dismiss.

I

A grand jury of the Circuit Court for Wise County/City of Norton, Virginia, returned an indictment on October 19, 2009, charging Randall Keyes with seven counts of knowingly communicating a threat by letter, in violation of Virginia Code § 18.2-60.[1] (Case No. F09-393.) Petitioner wrote to the Circuit Court, advising that his legal name was Randall Keystone[2] and asking the court to spell his name that way. Keystone and his counsel filed some motions under

---

[1] The letters which were the bases for these charges are not part of the state court record. The indictment, the stipulation of facts, and the plea colloquy and sentencing transcripts do not include information about the letters, the nature of the threats, or to whom the threats were directed.

[2] Keystone attaches as an exhibit to his § 2254 petition a document from Dorchester County, South Carolina, dated September 21, 1995, titled "Order for Changing Adult's Name," which appears to have granted Keyes' request to change his last name to Keystone. (Docket Entry ("DE") 1-4, p. 8.) Keystone admits in a letter to the Circuit Court judge dated November 19, 2009, however, that when he was arrested in 1998 on the current charges, he did not have proof of the name change, and the charges were issued based on his previous criminal record under the name "Keyes."

the name Keystone, and the judge signed some proposed orders using that name in Case No. F09-393. On March 9, 2010, Keystone pleaded guilty to five of the seven counts, pursuant to a written plea agreement in a combined guilty plea and sentencing hearing. (DE 1-4, pp. 9-18.) After first stating the style of the case as "Commonwealth of Virginia versus Randall Keyes," the judge stated, "For the record, I said 'Keyes' – this is actually Keystone, right? And that should be changed in the system. It's still Keyes in our system." (Hearing Transcript ("Tr.") 3, Mar. 9, 2010.)

Under oath at the guilty plea and sentencing hearing, Keystone testified that he had received a written "Questionnaire for Persons Entering Pleas of Guilty," that he had answered all the questions on the questionnaire truthfully, and had signed it. (Tr. 4.) In this document, Keystone stated that he understood the maximum punishment for his crimes was 25 years in prison and that the court was not bound by any agreement between the defendant and the Commonwealth. (DE 1-4, pp. 5-6.) Keystone also affirmed that he understood he was waiving his right to be tried by a jury, his right to confront and cross-examine witnesses, and his right to defend himself. He affirmed that he had decided to plead guilty for himself and that he was entering his pleas of guilty because he was guilty of the crimes charged.

Keystone testified that he had read, understood, and signed the written plea agreement. (Tr. 4.) The style of the type-written plea agreement in the record is "Commonwealth of Virginia v. Randall Jack Keyes," but the word "Keyes" is crossed out and the word "Keystone" is handwritten beside it. (DE 1-4, p. 1.) The plea agreement, which is signed by Keystone, Keystone's counsel, and the Commonwealth's Attorney, and by the trial judge to indicate the court's acceptance, contains only two provisions: that the Commonwealth would move to dismiss two of the seven counts and Keystone would serve two years, with one year suspended,

2

on each of the remaining counts. The agreement expressly states that "no circuit court judge has participated in this agreement" and that "[t]he defendant pleads guilty without threat or promises from any source other than this plea." (DE 1-4, p. 1)

The judge accepted the agreement and the guilty plea, along with the parties' stipulation that the Commonwealth would have sufficient evidence of guilt and Keystone's waiver of the Commonwealth's presentation of such evidence; the Court then sentenced Keystone to five years to serve, in accordance with the plea agreement. (Tr. 5-6.) The Court entered an order dated March 9, 2010, finding "Randall Jack Keystone, a/k/a Randall Jack Keyes" guilty, upon guilty pleas, of five counts of the indictment and sentencing him to a total of ten years' incarceration, with five years suspended. (DE 1-4, p. 2.) By amended order also dated March 9, 2010, the trial court pronounced the same judgment against "Randall Jack Keyes, a/k/a/ Randall Jack Keystone." (DE 1-4, pp. 19-21.) Keystone did not file a timely appeal from these convictions or sentences.[3]

On August 2, 2010, Keystone filed in the Court of Appeals of Virginia a petition for delayed appeal pursuant to Virginia Code § 19.2-321.1. In pertinent part, § 19.2-321.1(A) provides:

> When, due to the error, neglect, or fault of counsel representing the appellant, . . . or of the circuit court or an officer or employee thereof, an appeal in a criminal case has either (i) never been initiated; or (ii) been dismissed for failure to adhere to proper form, procedures, or time limits in the perfection of the appeal as required by law or by the Rules of the Supreme Court; then a motion for leave to pursue a delayed appeal may be filed in the Court of Appeals within six months after the appeal has been dismissed or the circuit court judgment sought to be appealed has become final, whichever is later. . . . If the error, neglect or fault is alleged to be that of an attorney representing the appellant, the motion shall be accompanied by the affidavit of the attorney whose error, neglect, or fault is alleged, verifying the specific facts alleged in the motion, and certifying that the

---

[3] Under Supreme Court of Virginia Rule 5A:6(a), a notice of appeal must be filed within thirty days from entry of the judgment.

3

appellant is not personally responsible, in whole or in part, for the error, neglect, or fault causing the loss of the original opportunity for appeal.

Va. Code § 19.2-321.1(A). Keystone claimed that the Circuit Court entered the amended order more than 21 days after the judgment, outside the time when the Court retained jurisdiction over the judgment under Sup. Ct. Va. Rule 1.1.[4] Keystone asserted that the Circuit Court's amended order dated March 9, 2010, listing his name as Keyes/Keystone, was typed and entered on the date handwritten on the lower left corner of the document, "5-21-10." A similar number appeared on the lower left corner of the last page of the original sentencing order, "3-11-10."

By order dated October 26, 2010, the Court of Appeals denied Keystone's motion, and he filed a petition for rehearing on November 7, 2010. (DE 1-4, pp. 33-34.) In a second order, dated January 24, 2011, the Court of Appeals expressly found that the handwritten notations did not prove the amended order was entered on a date different than March 9, 2010, found no basis to conclude that Keystone's failure to initiate a timely appeal was due to any fault of the Circuit Court or his counsel, and so found no ground for a delayed appeal under § 19.2-321.1(A).

Keystone filed a timely petition for a writ of habeas corpus in the Supreme Court of Virginia, which the Court dismissed by order dated July 27, 2011. (Record No. 110445) (DE 7, pp. 85-89.) Keystone then filed his timely § 2254 petition. The court has reviewed the parties' submissions, as well as state court records provided from the Circuit Court of Wise County/City of Norton and the Supreme Court of Virginia.

---

[4] Rule 1:1 reads, in pertinent part: "All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."

4

# II

## A. Applicable Law

Federal courts grant habeas relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to the reforms of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal habeas court may not grant habeas relief "with respect to any claim that was adjudicated on the merits" in state court unless the state court adjudication (1) "resulted in a decision that was contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). For the purposes of 28 U.S.C. § 2254(d)(1), an adjudication on the merits applies to all claims that were reached and decided in state court, even if decided in summary fashion. An "unreasonable application" is not synonymous with error; "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.__, __,131 S. Ct. 770, 786 (2011) (omitting internal quotations). Review of the state court judgment for reasonableness is limited to the record before the state court. Cullen v. Pinholster, 562 U.S.__, 131 S. Ct. 1388, 1398 (2011).

The federal habeas court must also presume the correctness of the state courts' factual findings unless the petitioner rebuts this presumption with "clear and convincing evidence."

§ 2254(e)(1). Where the record refutes petitioner's "factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."[5] Schriro, 550 U.S. at 474.

To prove that counsel's representation was so defective as to require reversal of the conviction or sentence, a petitioner must meet a two-prong standard, showing that counsel's defective performance resulted in prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of the representation. Id. at 687-88. The petitioner must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases and must identify counsel's specific acts or omissions that are allegedly "the result of reasonable professional conduct." Id. at 689-90.

Second, to show prejudice, the petitioner must demonstrate a "reasonable probability" that but for counsel's errors, the outcome would have been different. Id. at 694-95. In the guilty plea context, the petitioner shows prejudice by demonstrating that "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). Specifically, the petitioner must show "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59. The prejudice inquiry requires an objective analysis, in light of the circumstances the defendant would have faced at the time of his decision. Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (citing Hill, 474 U.S. at 59). Thus, petitioner's assertion in habeas proceedings

---

[5] Although Keystone's claims in the federal petition are not identical in all respects to the claims as raised in the state habeas proceedings, the respondent does not argue that any portion of the federal claims should be dismissed on grounds of procedural default. Therefore, the court addresses the federal claims on the merits, giving deference under § 2254(d) to any claim adjudicated by the Supreme Court of Virginia and under § 2254(e) to any facts found by the state courts.

6

that would not have pleaded guilty absent some action or omission by counsel is not decisive and must be evaluated in light of the record as a whole. Id. If a reviewing court determines that the petitioner's claim fails on either the "cause" or the "prejudice" prong of the Strickland/Hill test, the court's inquiry stops there and the claim fails. Strickland, 466 U.S. at 697.

### B. Discussion of Claims

**Claim (a)**

Keystone complains in Claim (a) that the trial court, by amending the sentencing order more than 21 days after entry of the original judgment to change the caption from Keystone/Keyes to Keyes/Keystone, (1) violated the plea agreement and (2) violated Supreme Court of Virginia Rule 1:1. Claim (a)(1), which was not expressly raised in the state petition, is contradicted by the language of the plea agreement and the guilty plea questionnaire, which indicate that the trial court was not a party to the agreement and, therefore, could not breach it. Moreover, the sentence the trial court imposed was entirely consistent with the provisions of the plea agreement, and the written agreement did not include a provision making the plea agreement contingent on the trial court's use of Keystone as the primary name for the defendant in the caption of the judgment order.

Claim (a)(2), alleging a violation of a state court rule, does not present a federal question. Violations of state law that do not implicate any federal right do not state any ground for federal habeas relief.[6] See Engle v. Isaac, 456 U.S. 107, 119 (1982). See also 28 U.S.C. § 2254(a) (authorizing federal habeas relief only where petitioner shows he is "in custody in violation of the Constitution or laws or treaties of the United States"). For the stated reasons, the court grants the motion to dismiss as to both portions of Claim (a).

---

[6] The Supreme Court of Virginia rejected the Rule 1:1 portion of Claim (a) upon finding that it did not state any claim for habeas corpus relief, because a judicial determination of the issue in Keystone's favor would not affect the legality of his custody. (DE 7, pp. 85-86.)

7

**Claims (b)**

Liberally construed, Keystone's federal Claim (b) raises two contentions: (1) that counsel erroneously advised Keystone that if he pleaded guilty, Keystone would be the initial name listed in the caption of court documents, and (2) that counsel failed to file a motion for delayed appeal under Virginia Code § 19.2-321.1(A), based on the amended order in which Keystone's names were reversed. These claims fail to provide grounds for relief under § 2254.

In Claim (b)(1) Keystone alleges that if counsel had not led him to believe that the sentencing order would list the name "Keystone" first, he would not have signed the plea agreement and would have proceeded to trial. It is true that Keystone asked the trial court to address him as Keystone rather than Keyes and that he had counsel change the name "Keyes" on the plea agreement to "Keystone." The record as a whole, however, does not support Keystone's habeas claim that the caption of the Circuit Court's orders played a decisive role in the guilty plea negotiations. The indictment listed the defendant's name as "Keyes," and the amended order merely reflected that fact, while listing "Keystone" as well. The plea agreement and questionnaire do not include any provision guaranteeing that Keystone's name will be listed in any particular way on court documents, and the plea agreement indicates the plea is not based on any promise outside the written agreement. The transcript of the plea and sentencing hearing includes no discussion of how Keystone's names would appear in the Court's orders. The Court merely commented that the Court's record needed to be changed because it listed only the name "Keyes," and the Court's amended order, listing "Keyes/Keystone," is consistent with the Court's comment. Keystone fails to present any viable defense that he would have presented at trial on the seven the charges against him to have a hope of escaping a long sentence. Moreover, letters and other documents in the state court record indicate Keystone's concern about the

8

lengthy sentence he faced and his desire to reach a plea bargain to reduce that sentence, without any mention of such a plea being conditioned on listing Keystone as his primary name on court orders. Thus, Keystone's Claim (b)(1) fails on the prejudice prong under Hill. 474 U.S. at 60 (finding no prejudice where petitioner "alleged no special circumstances to support the conclusion that he placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty"); Hooper, 845 F.2d at 475 (finding that prejudice inquiry under Hill requires objective analysis of circumstances at time of plea showing reasonable probability that petitioner would have insisted on trial absent counsel's misadvice before entry of guilty plea). The court grants the motion to dismiss as to Claim (b)(1).

The Supreme Court of Virginia dismissed Claim (b)(2) under Strickland upon finding no evidence that counsel's actions caused Keystone to lose his right to appeal. As discussed, Keystone submitted a timely petition for delayed appeal that the Court of Appeals found to be without merit on state law grounds. This court cannot second guess the state court's finding that he had not provided grounds for a delayed appeal under § 19.2-321.1(A). See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); see also § 2254(e)(2). Therefore, Keystone cannot show any reasonable probability that a counseled petition for delayed appeal on the same grounds would have resulted in any different outcome. Thus, Keystone fails to demonstrate prejudice as required under Strickland. In addition, for reasons discussed under Claim (c), infra, Keystone had no right to counsel in pursuing a motion for delayed appeal and so had no right to the effective assistance of counsel. See Wainwright v. Torna, 455 U.S. 586, 587-588 (1982) ( per curiam) ("Since respondent had no constitutional right to counsel, he could not

9

be deprived of the effective assistance of counsel by his retained counsel's failure to file the application timely"). The court grants the motion to dismiss as to Claim (b)(2).

**Claim (c)**

In Claim (c), Keystone faults the Court of Appeals for failing to appoint counsel for Keystone's motion for delayed appeal. In Keystone's state habeas proceedings, the Supreme Court of Virginia rejected Claim (c) as meritless under Evitts v. Lucy, 469 U.S. 387, 393 (1985). The Court reasoned that because "[a] motion for delayed appeal [under Va. Code § 19.2-321.1] 'is not an integral part of the system for finally adjudicating the guilt or innocence of a defendant,'" Keystone had no right to counsel in pursuing his motion for delayed appeal. (DE 7, pp. 86-87) (quoting Evitts, 469 U.S. at 393. This court cannot reexamine the state court's decision that the post-conviction procedure authorized in § 19.2-321.1 is not "integral" to the appeal of right available to criminal defendants under state law. Estelle, 502 U.S. at 67-68.

Moreover, Keystone fails to demonstrate that the state court's ruling was contrary to or an unreasonable application of Evitts. Although

> the Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors, if a State has created appellate courts as an integral part of the [state's] system for finally adjudicating the guilt or innocence of a defendant, . . . the procedures used in deciding appeals must comport with the demands of the Due Process and Equal Protection Clauses of the Constitution [including the effective assistance of counsel to complete that appeal].

Evitts, 469 U.S. at 393-96 (omitting internal quotations and citations). A state court procedure not "integral" to the determination of a defendant's "guilt or innocence," however, does not trigger a right to counsel. Section 19.2-321.1 has no bearing on the adjudication of the defendant's guilt or innocence in his appeal as of right. At the most, this statute provides one avenue for the defendant to seek reinstatement of his right to appeal, at the discretion of the

Court of Appeals on very narrow, case-specific criteria. The court grants the motion to dismiss under § 2254(d) as to Claim (c).

**Claim (d)**

In his last § 2254 claim, Keystone alleges that he should be allowed "to withdraw his guilty plea and plead anew, if the original plea-agreement/sent. order isn't honored." (DE 1, p. 7.) The court finds no merit to this claim.

"Because a plea of guilty is a solemn, judicial admission of the truth of the charge, a prisoner's right to contest it is usually, but not invaribly, foreclosed. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d 167, 171 (4th Cir. 1981) (citing Blackledge v. Allison, 431 U.S. 63 (1977)). The defendant's "statements at arraignment that facially demonstrate the validity of his plea are conclusive unless he presents reasons why this should not be so." Id. A prisoner may attack the validity of his guilty plea only by showing that counsel's advice regarding the plea failed to satisfy constitutional standards for such advice. Tollett v. Henderson, 411 U.S. 258, 267 (1973).

Keystone's statements during the guilty plea process—his statements under oath to the Court, as well as the statements in the plea agreement and the guilty plea questionnaire—demonstrate that Keystone knowingly and voluntarily pleaded guilty, pursuant to the plea agreement, in order to achieve dismissal of two counts and a substantial reduction of the sentence for the remaining five counts. Keystone stated under oath that he was not pleading guilty to any promise outside the written plea agreement, which does not contain any provision requiring his birth name and his legal name to be listed in any particular order on court documents. The court must presume the truth of the statements Keystone made in entering the guilty plea, absent a showing that counsel's representation violated Keystone's constitutional rights related to the

11

guilty plea. Tollett, 411 U.S. at 267. The court has already determined that Keystone fails to make such a showing. See discussion of Claim (b)(2), supra. Therefore, the court grants the motion to dismiss as to Claim (d).

### III

For the reasons stated, the court concludes that Keystone fails to establish any ground for relief under § 2254. Therefore, the court grants the motion to dismiss. An appropriate order will enter this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to petitioner and to counsel of record for the respondent.

ENTER: This 29th day of August, 2012.

/s/ James C. Turk
Senior United States District Judge